UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RONNIE R. MARTIN,

                Plaintiff,

v.

OFFICER JOHNNIE MIELCAREK, OFFICER ANTHONY GARCIA, CAPTAIN TIMOTHY BLUNT, DOE DEFENDANTS, CITY OF ST. FRANCIS, and ABC INSURANCE COMPANY,

                Defendants.

Case No. 24-CV-1665-JPS

**ORDER**

1. **INTRODUCTION**

In late December 2024, Plaintiff Ronnie R. Martin ("Martin"), proceeding pro se, filed a complaint in this matter, alleging, inter alia, violations of his constitutional rights. ECF No. 1. The Court granted Martin's motion for leave to proceed without prepaying the filing fee, and after screening the complaint "[found] that additional factual detail [was] necessary to determine the claim(s) on which Martin may be able to proceed, . . . grant[ed] him leave to file an amended complaint." ECF No. 5 at 1. Martin has since filed an amended complaint, ECF No. 10, which the Court screens herein.

2. **SCREENING STANDARD**

When a pro se litigant seeks to proceed in forma pauperis, the Court must screen the litigant's complaint prior to service on defendants. The Court "shall dismiss the case" if it finds any of the following: the action is frivolous or malicious, the complaint fails to state a claim upon which relief

may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2); or the case is outside of the Court's subject matter jurisdiction, Fed. R. Civ. P. 12(h).

A claim is legally frivolous when it "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)); *see also Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997) (quoting *Neitzke*, 490 U.S. at 325). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v.*

*Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678) (internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### 3. FACTUAL ALLEGATIONS[1]

Martin alleges that Officer Johnnie Mielcarek ("Officer Mielcarek"), an officer of the St. Francis Police Department ("SFPD"), threatened him via phone call on March 13, 2024. ECF No. 10 at 2. Officer Mielcarek told Martin that "he would 'hunt [Martin] down' if [Martin] did not bring him the house key" to a residence that Keitha Turner ("Turner") shared with Martin. *Id.* at 7–8. Martin asserts that this threat "was not connected to any official investigation or probable cause." *Id.* at 8.

Martin filed a police misconduct report against Officer Mielcarek. *Id.* at 4. On March 15, 2024, SFPD Captain Timothy Blunt ("Captain Blunt") followed up with Martin by email, and Martin understood that no corrective action would be taken against Officer Mielcarek. *Id.*

Later, on July 9, 2024, Officer Mielcarek arrested Martin. *Id.* Martin was searched and/or arrested pursuant to warrant. *See id.* at 9 (referencing a "search warrant" and alleging that Martin was "subjected to an unlawful

---

[1] Citations to the facts laid out in this section are omitted from later analysis.

In addition to his amended complaint, Martin filed a "notice" that "a communication has been sent to President Ibrahim Traoré of Burkina Faso, accompanied by a petition submitted to the World Court," which "places [this] case[] under international scrutiny." ECF No. 9 at 1. Because this material is addressed to a different tribunal, the Court will not consider it in assessing Martin's amended complaint.

search and detention"). Martin was detained for two days after the arrest and was apparently released without charges.² *Id.* at 4.

He alleges that his arrest was based on allegations that were "fabricated" by SFPD Officer Anthony Garcia ("Officer Garcia") and Turner. *Id.* Martin alleges that Turner, however, was not credible. *Id.* Martin says that Turner "had been neglecting and abusing [his and Turner's] . . . daughter" and that he provided "proof" of this abuse to SFPD, but Turner made false allegations to SFPD about Martin "in order to blackmail him from reporting such child abuse." *Id.* at 7; *id.* at 8 ("Officer Mielcarek and his colleagues knowingly relied on false statements from . . . Turner, despite having information that discredited her claims."). Martin alleges that Officer Garcia "coerc[ed] . . . Turner into signing a 'no contact order' and fail[ed] to inform [Martin] of this order, which was used to fabricate a criminal case against him." *Id.* at 7. He accuses Officers Mielcarek and Garcia of making misrepresentations to the court that issued the arrest or search warrant. *See id.* at 9. He also says that Officer Garcia withheld "exculpatory evidence" about Martin from the prosecutor. *Id.* at 4.³

Martin alleges that Officer Mielcarek used excessive force in arresting him by "aggressively and unnecessarily tighten[ing] the handcuffs on [Martin's] wrists in a manner that caused pain and fear" and

---

²The Court—which may take judicial notice of "public court documents," *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)—was not able to locate any case on the Wisconsin Circuit Court Access Program showing charges against Martin related to the July 9, 2024 arrest, and Plaintiff's amended complaint mentions no related charges, so the Court will presume that he was not formally charged with any crime related to that arrest.

³Martin also alleges that Officers Mielcarek and Garcia had inappropriate personal relationships and communications with Turner, "including phone calls and text messages in which they discussed plans to arrest [Martin]." ECF No. 10 at 8.

used a "facial expression and body language" that "caus[ed] [Martin] to fear for his safety." *Id.* at 8.

He also alleges that the Defendants' actions toward him were done "in retaliation to [him] exercising his [r]ights as a Black man against officers who do not honor the [r]ights of Blacks." *Id.* at 5–6.

Martin says that Captain Blunt's failure to adequately respond to Martin's March 2024 complaint against Officer Mielcarek "directly contributed to" and "enabled a chain of misconduct" that resulted in these constitutional violations during his July 2024 arrest. *Id.* at 10 ("Captain Blunt failed to take any remedial action, discipline the officers, or intervene to prevent an unlawful arrest."). He states that Officers Garcia and Mielcarek, and possibly Captain Blunt, "acted in concert" and/or that all Defendants acted together to violate his civil rights but does not specify what joint action(s) they took. *Id.* at 4, 7 (civil rights conspiracy claim).

Martin alleges in a conclusory manner that Officers Mielcarek and Garcia acted "willfully, maliciously, with deliberate indifference, or with reckless disregard" of Martin's rights. *Id.* at 4; *see also id.* at 2, 7. He says that Captain Blunt's failure to discipline and supervise Officers Mielcarek and Garcia led to violations of his constitutional rights. *Id.* at 10. He further alleges that some or all of the Defendants conspired among themselves and/or with Turner to deprive him of his constitutional rights. *Id.* at 5, 7, 9.

Martin names the City of St. Francis as a defendant and accuses it of having policies or customs that cause constitutional violations and of failing to adequately train and supervise its officers.[4] *Id.* at 9. He also names its

---

[4]Martin raises this claim against the City of Milwaukee, ECF No. 10 at 9, which is not a defendant. The Court will presume that Martin intends to raise this allegation against the City of St. Francis.

insurer, apparently for indemnity purposes. *Id.* at 4. Finally, he names "Doe Defendants" in the caption, *id.* at 1, but does not include any allegations about them or state how they were involved in the above-described events.

Martin says that these events caused him "physical, emotional, and psychological harm" and "exacerbate[ed] [his] pre-existing Post-Traumatic Stress Disorder (PTSD) caused by previous police misconduct." *Id.* at 4; *see also id.* at 2, 10. For relief, he seeks compensatory and punitive damages, injunctive relief, and other equitable relief. *Id.* at 10–11.

## 4. ANALYSIS

Martin outlines several claims he wishes to raise. *See id.* at 5–7. Considering his list of claims and the nature of his allegations, the Court discerns the following potential claims in the amended complaint:

- A Fourth Amendment unlawful arrest claim;
- A claim that his arrest was retaliatory in violation of the First Amendment or discriminatory in violation of the Fourteenth Amendment;
- A Fourth Amendment excessive force claim;
- A Fourth Amendment claim for wrongful detention based on fabricated evidence;
- A claim for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) ("*Monell*");
- A claim of conspiracy to deprive Martin of his civil rights; and
- State law claims of false arrest/imprisonment, intentional infliction of emotional distress, and deceit and witness tampering.

The Court analyzes each claim in turn.

### 4.1 Fourth Amendment Unlawful Arrest

"An unlawful arrest occurs when a person is seized by police without probable cause." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008) (quoting *A.M. v. Butler*, 360 F.3d 787, 798 (7th Cir. 2004) and citing *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998)). A police officer has probable cause to arrest an individual when "'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)). The analysis is objective: "[t]he court evaluates probable cause not on the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer." *Id.* (internal quotation marks and citations omitted).

Martin alleges that Officer Mielcarek arrested him based on false or fabricated information from Officer Garcia and Turner and/or pursuant to an arrest warrant that was obtained based on misrepresentations. He also alleges that Officer Garcia withheld exculpatory information from the prosecutor, presumably during the prosecutor's attempts to get a search or arrest warrant. Martin does not describe the nature of the false or misleading information that led to issuance of the warrant, nor does he describe the allegedly exculpatory evidence that Officer Garcia withheld; this will need to be developed in the factfinding portion of this case. But if Martin's allegations are true, and there was indeed false or misleading information in the application for a search or arrest warrant, or if Officer Mielcarek knew of exculpatory information at the time of arrest that would

have undermined a finding of probable cause, this could support a finding that Martin was arrested without probable cause. Therefore, these allegations are sufficient at the screening stage to support a Fourth Amendment unlawful arrest claim.[5]

Martin may proceed on this claim against Officer Mielcarek for arresting him and against Officer Garcia for allegedly supplying false information that led to his arrest and/or for withholding exculpatory information that would have undermined a finding of probable cause. *See Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985) (noting that an officer who includes false statements on a warrant affidavit "cause[s] . . . [an] illegal arrest"); *Mustafa*, 442 F.3d at 547 (citation omitted).[6]

Martin additionally alleges that Captain Blunt, by failing to respond to Martin's March 2024 complaint that Officer Mielcarek threatened him, directly contributed to this unlawful arrest. "[S]upervisory liability can be established if the conduct causing the constitutional deprivation occurs at the supervisor's direction or with the supervisor's knowledge and consent." *Nanda v. Moss*, 412 F.3d 836, 842 (7th Cir. 2005) (citing *Jones v. City*

---

[5]Martin will ultimately need to show that Officer Mielcarek knew of or possessed, *at the time of Martin's arrest*, sufficient exculpatory information to outweigh the finding of probable cause; it will not be enough to say that Mielcarek could have later discovered exculpatory information. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) ("[I]f an officer has established cause on every element of a crime, he need not continue investigating in order to test the suspect's claim of innocence." (citing *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 437–42 (7th Cir. 1986))).

[6]However, Martin cannot proceed on a claim that any failure to disclose exculpatory material violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* applies where a prosecution has taken place and the criminal defendant was prejudiced in the prosecution by the government's failure to disclose the exculpatory material. *See Strickler v. Greene*, 527 U.S. 263, 281 (1999). Here, there was no prosecution, so there cannot have been any *Brady* violation.

*of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988)). Martin alleges at best a tenuous connection between Captain Blunt's supervision and Martin's allegedly unlawful arrest, but at this stage the Court will permit Martin to proceed on his Fourth Amendment unlawful arrest claim against Captain Blunt under a supervisory-liability theory.

### 4.2 Retaliatory or Discriminatory Arrest

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out . . . ." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998) and *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). "To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements": (1) that "he engaged in protected First Amendment activity," (2) that "an adverse action was taken against him," and (3) that "his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).[7]

"To show a violation of the Equal Protection Clause, [a] plaintiff[] must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001) (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272–74 (1979), *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–66 (1977), and *Washington v. Davis*, 426 U.S. 229, 239–42 (1976)).

---

[7]Additionally, "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). Martin's allegations with respect to his Fourth Amendment unlawful arrest claim will therefore be relevant to any First Amendment claim he may pursue.

The Court previously found that "Martin . . . alleged in a conclusory manner that the officer(s) who arrested him did so in retaliation for Martin 'exercising his [r]ights as a Black man'" and gave Martin leave to amend to add more factual allegations if he intended to raise either a claim for retaliatory arrest in violation of the First Amendment or discriminatory arrest in violation of the Equal Protection Clause of the Fourteenth Amendment. ECF No. 5 at 10–11. Martin has repeated this allegation verbatim without adding any additional facts. Without more information or clarification from Martin concerning these potential claims, the Court cannot permit Martin to proceed on a First Amendment retaliatory arrest claim or a Fourteenth Amendment discriminatory arrest claim. To the extent Martin intended to raise these claims in the amended complaint, they will be dismissed with prejudice for failure to state a claim.

### 4.3 Fourth Amendment Excessive Force

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure . . . ." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "To establish a claim of excessive force under the Fourth Amendment, [a] plaintiff[] must show 1) there was a seizure, and 2) the seizure was objectively unreasonable." *Boone v. City of Milwaukee*, No. 08-C-0167, 2011 WL 4472845, at *2 (E.D. Wis. Sept. 26, 2011) (citing *Campbell v. White,* 916 F.2d 421, 423 (7th Cir. 1990)).

Martin has alleged that Officer Mielcarek restrained him in a way that caused him emotional, mental, and/or physical harm. This is sufficient at the screening stage to state a Fourth Amendment excessive force claim

against Officer Mielcarek.[8] *See Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) ("[A]n excessive force claim does not require any particular degree of injury." (collecting cases)).

### 4.4 Fourth Amendment Wrongful Detention Claim Based on Fabricated Evidence

Martin alleges that his arrest and subsequent two-day detention was based on false, inaccurate, or incomplete information. He asserts this as a claim of "witness tampering" and "[d]eceit." ECF No. 10 at 7. As the Court already explained, ECF No. 5 at 16, Wisconsin law does not appear to recognize such a claim. However, in the interest of construing his pleading liberally, *Haines*, 404 U.S. at 520–21, the Court will examine whether Martin may proceed on such allegations as the basis for a Fourth Amendment unlawful detention claim under federal law.

"Allegations of wrongful arrest and detention [based on fabricated evidence] . . . are actionable under the Fourth Amendment . . . ." *DeLaRosa v. Village of Romeoville*, No. 23 CV 7049, 2024 WL 1579394, at *3 (N.D. Ill. Apr. 11, 2024) (citing *Manuel v. City of Joliet*, 580 U.S. 357, 365 (2017)). Martin is alleging that he was arrested and then detained based on false, inaccurate, or incomplete information. The law supports this theory in some instances. *See id.* (examining Fourth Amendment unlawful detention claim based on assertions that "the defendants fabricated the police reports, an affidavit submitted to obtain a search warrant, and the grand jury testimony, resulting in his unlawful [pretrial] detention . . . .").[9]

---

[8]Martin again raises a claim that his arrest violated the Eighth Amendment's prohibition against cruel and unusual punishment. ECF No. 10 at 5–6. For reasons already explained in the Court's prior screening, "[s]uch a claim is not relevant in this case." ECF No. 5 at 12 n.7 (citations omitted).

[9]Malicious prosecution is another Fourth Amendment claim that often accompanies a Fourth Amendment wrongful detention claim. *See, e.g.*, *DeLaRosa*,

As the Court understands the amended complaint, Martin is alleging that Officer Garcia provided false or fabricated information from Turner to obtain the warrant under which Officer Mielcarek searched or arrested Martin, and that Officer Mielcarek also relied on false statements from Turner at some point in this process. The nature of the false or fabricated information is not clear and will need to be developed in the factfinding portion of this case. But these allegations, though bare, are sufficient at this stage to support a Fourth Amendment wrongful detention claim based on fabricated evidence. *See DeLaRosa*, 2024 WL 1579394, at *3. Martin may proceed on this claim against Officer Mielcarek and Officer Garcia.

### 4.5 Municipal Liability

Martin names the City of St. Francis as a defendant, explicitly references *Monell*, and states that the City of St. Francis had policies or customs that caused violations of his constitutional rights and that it failed to adequately train and supervise its officers.

A *Monell* claim requires Martin to plead that the SFPD Officer Defendants violated his constitutional rights because of or pursuant to an official policy or custom of the City of St. Francis. *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020) (plaintiff must plead "an action pursuant to a municipal policy" (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404–07 (1997))).

Martin has alleged in a conclusory manner that the City of St. Francis/SFPD failed to properly train, supervise, or discipline SFPD officers

---

2024 WL 1579394, at *3. Although Fourth Amendment malicious prosecution claims are recognized under the Fourth Amendment, *see Thompson v. Clark*, 596 U.S. 36, 42 (2022), it does not appear that Martin was prosecuted. Rather, he was detained and then released without charges. *See* supra note 2 and accompanying text. Accordingly, this theory appears to be inapplicable in this case.

and/or had a policy or custom that permitted the officers involved in his arrest to violate his constitutional rights. Though the Court has doubts about the viability of these allegations, it will accept these conclusory allegations at the screening stage and permit Martin to proceed on a *Monell* claim against the City of St. Francis.[10]

### 4.6 Civil Rights Conspiracy

Martin alleges that Defendants conspired to deprive him of his constitutional rights. A civil rights conspiracy claim proceeds under 42 U.S.C. § 1985(3). To plead a violation of § 1985(3), a plaintiff must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000) (quoting *Majeske v. Fraternal Order of Police, Loc. Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996)). A civil rights conspiracy claim must include an allegation of "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002) (citing *Majeske*, 94 F.3d at 311). The statute's coverage also extends to "conspiracies to discriminate against persons based on sex, religion, ethnicity or political loyalty." *Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir. 1988) (collecting cases).

As noted *supra* Section 4.2, Martin has not adequately pleaded that his arrest was discriminatory on the basis of his race, so his civil rights claim

---

[10] If Martin cannot ultimately demonstrate that one or more individual Defendants violated his constitutional rights, any *Monell* claim will also fail. *Carr v. City of North Chicago*, 908 F. Supp. 2d 926, 930 (N.D. Ill. 2012) ("A predicate to recovery under *Monell* is, of course, a constitutional injury." (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))).

fails because it does not allege "discriminatory animus." *Green*, 281 F.3d at 665. He also has not alleged any particular act in furtherance of a conspiracy. For both of these reasons, this claim fails. Martin has already been given an opportunity and instructions on how to properly plead this claim and has failed to properly do so. Thus, the Court will dismiss his conspiracy claim with prejudice for failure to state a claim.

### 4.7 State Law Claims

Because Martin is proceeding on several federal constitutional claims, the Court will exercise supplemental jurisdiction over his purported state law claims to the extent they are related to his federal claims. 28 U.S.C. § 1367(a).

#### 4.7.1 Deceit and Witness Tampering

Martin again attempts to raise a claim of deceit and witness tampering (which would presumably proceed as a state tort claim), ECF No. 10 at 7, despite the Court's previous dismissal with prejudice of such a claim, ECF No. 5 at 16. There is no reason for the Court to revisit its prior finding that such a claim is not available under state law, so it will stand dismissed with prejudice.

#### 4.7.2 False Arrest/Imprisonment

"Under Wisconsin law, '[f]alse imprisonment [or arrest] has been defined as the unlawful restraint by one person of the physical liberty of another.'" *Harris v. Milwaukee Police Dep't*, No. 17-cv-837-pp, 2018 U.S. Dist. LEXIS 146161, at *11–12 (E.D. Wis. Aug. 28, 2018) (quoting *Stern v. Thompson & Coates, Ltd.*, 517 N.W.2d 658, 666 (Wis. 1994) (internal quotation marks omitted)).

Martin's Fourth Amendment unlawful arrest and unlawful detention claims do not necessarily preclude his assertion of a state law

false arrest/imprisonment claim. *See Bentz v. City of Kendallville*, 577 F.3d 776, 780 (7th Cir. 2009) (noting that a plaintiff may assert both federal and state law claims and citing *Bielanski v. County of Kane*, 550 F.3d 632, 637 (7th Cir. 2008) and *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002)). Indeed, the same allegations that support his Fourth Amendment unlawful arrest and detention claims may support a false arrest or imprisonment claim under Wisconsin law as well. *See supra* Sections 4.2 and 4.4 Martin may proceed on this claim.

### 4.7.3 Intentional Infliction of Emotional Distress

The elements of an intentional infliction of emotional distress claim are "(1) that the defendant's conduct was intentioned to cause emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct was a cause-in-fact of the plaintiff's emotional distress; and (4) that the plaintiff suffered an extreme disabling emotional response to the defendant's conduct." *Rabideau v. City of Racine*, 627 N.W.2d 795, ¶ 33 (Wis. 2001) (citing *Alsteen v. Gehl,* 124 N.W.2d 312, 318 (Wis. 1963) and Wis. Civil Jury Instruction 2725).

Martin alleges that Officer Mielcarek, Officer Garcia, and/or Captain Blount's conduct was willful, "extreme and outrageous," and caused him "severe emotional distress." ECF No. 10 at 9 (referencing "Defendants" generally). These allegations are sufficient for Martin to proceed on a claim of intentional infliction of emotional distress against Officer Mielcarek, Officer Garcia, and Captain Blunt.

5.  **CONCLUSION**

For all the reasons stated above, Martin may proceed on the following claims:

- A Fourth Amendment unlawful arrest claim against Officer Mielcarek, Officer Garcia, and Captain Blunt;
- A Fourth Amendment excessive force claim against Officer Mielcarek;
- A Fourth Amendment claim for wrongful detention based on fabricated evidence against Officer Mielcarek and Officer Garcia;
- A claim for municipal liability under *Monell* against the City of St. Francis; and
- State law claims of false arrest/imprisonment and intentional infliction of emotional distress against Officer Mielcarek, Officer Garcia, and Captain Blunt.

Martin's civil rights conspiracy claim will be dismissed with prejudice for failure to state a claim, as will his First Amendment retaliatory arrest or Fourth Amendment discriminatory arrest claims, to the extent he intended to raise such claims. His state law claim for deceit and witness tampering stands dismissed with prejudice. Finally, because Martin has not made any allegations against the Doe Defendants or suggested that other officers whose identities he does not know were involved in the above-described events, the Court will direct the Clerk of Court to terminate the Doe Defendants from the docket. If Martin learns through discovery that other officers were involved in the events alleged in his amended complaint, he may then seek leave to file an amended complaint to name them.

The next step in this case is service of the amended complaint on the known Defendants: SFPD Officer Defendants Mielcarek and Garcia, SFPD

Captain Timothy Blunt, and the City of St. Francis. Federal Rule of Civil Procedure 4(c)(3) provides that the Court must order service of the operative complaint by the U.S. Marshals Service if a plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 and if the plaintiff so requests. *See Williams v. Werlinger*, 795 F.3d 759, 759 (7th Cir. 2015). Congress requires the U.S. Marshals Service to charge a fee for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for service by mail is $8.00 per item mailed; for process served personally by the U.S. Marshals Service, the fee is $65 per hour. 28 C.F.R. § 0.114(a)(2), (a)(3). Congress has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service.

Martin has already been authorized to proceed in forma pauperis. ECF No. 5 at 21. Thus, the Court will require Martin to file a notice on or before **September 26, 2025** indicating whether he desires service by the U.S. Marshals Service or will obtain service on his own. If Martin wants to effect service himself, he should simultaneously file a request for the Clerk of the Court to issue a service packet to him.

Accordingly,

**IT IS ORDERED** that Plaintiff Ronnie Martin's First Amendment retaliatory arrest claim, Fourth Amendment discriminatory arrest claim, and 42 U.S.C. § 1985(3) civil rights conspiracy claim be and the same are hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that the Clerk of Court **TERMINATE** the Doe Defendants from the docket; and

**IT IS FURTHER ORDERED** that, on or before **September 26, 2025**, Plaintiff Ronnie Martin shall **FILE** a notice indicating whether he desires service by the U.S. Marshals Service or will obtain service on his own.

Dated at Milwaukee, Wisconsin, this 12th day of September, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiff will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.